Good morning, Your Honor. May it please the Court, I'm John Minster, and I represent the estate of James Frederick Brutsche and his parents, Pat and Norma Brutsche, and James' dad, Pat Brutsche, is in the back there on the right side. I'd like to reserve three minutes for rebuttal. The first issue I'd like to address is, the first argument I'd like to make is that on the record in this case, a definition of the term active resistance should have been given. The issue of whether Jim Brutsche quote-unquote actively resisted was one of the most hotly contested issues in this trial. The plaintiff's witnesses testified that he didn't resist at all and that he lay on the floor shirtless, clearly he was unarmed. None of the officers claimed that they thought he posed an immediate threat. None of them claimed that he struck a blow or assaulted or even touched them. Why is the jury instruction necessary on active resistance? Because the meaning of the term became an issue in the trial because of, A, the conflicts in the testimony, and most importantly, the conflict in the testimony between the plaintiff's expert, Mr. Danaher, and the defense expert, Mr. Ovens. The jury's entitled to resolve that conflict though. One witness says this, one witness says that. We've got a room full of attorneys here, we've all had cases where dueling experts, one expert says this, the other expert says that, and then the jury resolves the conflict. Why did the judge need to instruct on this term active resistance just because one of the experts used it? Because the term active resistance is one of the Graham factors, and whether somebody actively resisted or not is one of the legal issues, or maybe mixed factual and legal issues that goes to whether force used was unreasonable or reasonable. Why was there, what were these experts expert on? Why are they even testifying about active resistance? It's a legal idea. Well, we presented testimony as to what active resistance was. Why? To show that... To me, the problem here is, I'm probably too late, but I don't know why there was testimony on that at all. Because the two sides knew that their experts were... I'm asking why it was permissible to have people testifying about what a legal term means. That's what you're saying. Well, I'm not saying they were testifying about what a legal term means. They were talking about what... Oh, go ahead. Go ahead. They were testifying about what the term means pursuant to law enforcement practices. But to get back to Judge Mayen, your question, it's a lawyer's job to convince the jury that the facts fit the law. But it's not the lawyer's job, and the lawyer can't be required to convince the jury as to what the law is. And that's why we needed a jury instruction on active resistance. Because our experts said active resistance is things like trying to assault the officer, trying to strike somebody. The defense experts said active resistance is anything beyond cooked pasta. In other words, if you're not lying limp on the street, you're actively resisting, and therefore the officers can use force. And that's why we needed an instruction, because the jurors... Back to what I was saying again. Pardon me? You turned away from what I was trying to get to. And the problem here is that you now tell me that they testified to what the law enforcement practice was. Well, you certainly have to have an instruction on that. So if they were testifying to what the law enforcement practice is, then that's not a legal concept, and there's no reason to have an instruction on it. Right? In other words, there are two possibilities. One is that they're testifying to what, in their experience, law enforcement does. And if there's a conflict on that, certainly there's no reason to have an instruction on it. The other possibility is that they were testifying to the legal concept of what the factor means under Graham, and any conflict on that can't possibly be something that is the subject of a fact-finding. So I'm confused about what the whole context is here. The context is the experts gave their definitions, as they understood it, of what active resistance is. And I believe they testified to it in terms of law enforcement standards and practices. They were not expressing opinions on a legal issue. However, in this case, the jurors had testimony about what happened that was in conflict, and they had the testimony as to what constitutes active resistance, which was almost diametrically opposed between these two gentlemen. But the judge did give a standard excessive force instruction, didn't he? He did. Go ahead. I'm interested in the collateral estoppel problem. Okay. You brought up a state court case, if I understand it correctly, and argued that there was property damage, waste, and I guess a takings. Correct. Lost in state court. And on that issue, if I understand it right, that decision has now just recently been affirmed by the Washington Supreme Court. I was going to get to that. We had a 5-4 ruling from the Washington Supreme Court this month. Right. The court ruled that we had stated a cause of action for trespassing and that citizens can recover from the police for property damage done during the service of a warrant if it's excessive. But they said that our facts were not enough to get to the jury. Why aren't you out of business on that one then? Well, we filed a motion for reconsideration. We lied to be blunt. You know, we lost 5-4. I admit that, you know, on the state court case, on that issue, is there a final judgment on the merits? You know, we are in the bottom of the ninth inning. We're at the motion for reconsideration stage. But we do have that. Well, let me ask it this way. Unless they change their minds, are you done on that issue? Well, no, because there are two other elements that I addressed in the brief, and I think we still have. One is that applying collateral estoppel would work in injustice. For example, we had two experts in the case, one of whom we didn't get to call, and that's one of the issues I briefed, and I'll note briefly. But that was cumulative. Well, you know, we're the plaintiff. We have the burden of proof, and the conflict in the case, one of the big conflicts was active resistance, and our expert. But, I mean, your expert, it was what we have in every trial. My expert says X, your expert says Y. Now I want to present a second expert who's going to say X again. You say, well, let me present another expert who says Y again. I mean, it goes back and forth. Every case would be interminable because we have people who keep saying yes, no, yes, no, yes, no, like a tennis match. I mean, your second expert didn't add anything other than he bolstered your first expert's opinion, right? He was not a rebuttal witness in the sense that he was going to bring up something new that had never been heard before. Well, he was a rebuttal witness in the sense that he's rebutting Mr. Overton. That's what I'm saying. Every case has that. And as a lawyer, gee, I'd like to have two experts testify to your one. But that's all it is. It's not a true rebuttal witness. Well, frankly, I think as a matter of fairness, especially since I have the burden of proof, and especially where you have this conflict, and above all where we don't get an instruction on what active resistance is, I think simple fairness demands that we should have been able to call our second expert. Yeah, but at the time you didn't know you were not going to get an instruction on active resistance. I don't know if you recall if we had settled the instructions at that point or not. But, I mean, this is all in the state court trial. I mean, if there was some irregularity in what you were allowed or not allowed to prove in the state court case, I guess you could have addressed that in the state court appeal. And if they thought you were treated unfairly, they would have given you a new trial in state court. Well, and to go back to finish up, to give you a complete answer on the collateral estoppel, we think that applying collateral estoppel here would work in injustice. We didn't have these experts at the state court case. I came into the state court case while I was on appeal. And so the state court was not presented with the testimony of those experts on whether the manner in which the warrant was served was unreasonable. That's our Fourth Amendment claim in federal court. And it's not the same as a takings claim, which we had in federal court. It's not the same as a trespass claim, which the Supreme Court said we could bring forward, but they said the evidence was insufficient. And finally, the Supreme Court, in the recent decision, declined to address the negligence claim. So the issues, and that leads to my last point about collateral estoppel, the issues are not identical. In federal court, we were bringing a Fourth Amendment unreasonable manner of search claim. That's not the same thing as a state court trespass claim. It's certainly not the same as a just compensation clause claim. Can I ask a question? The proposed instruction on active resistance, where did that come from? That was drawn from the circuit's decision in Headwaters Forest Defense, and the circuit was quoting, I believe, the definition of active resistance. I think it was the Humboldt County Sheriff's Office in that case. And they cited that as a definition of active resistance en route to holding, that a jury could find that the protesters in that case did not engage in active resistance. So that's where the instruction comes from. But the definition that they used in that case, as I indicate in my brief, is in accord with this circuit's discussion of the issue of active resistance in other cases. And the best example of that is the circuit's on-bank decision in Smith v. Hemet, where they discussed what Mr. Smith did, whether it constituted resistance. He wasn't bellicose. He didn't show any signs of fleeing. He didn't attack the officers. He didn't threaten them. So the similarities between the circuit's discussion of active resistance in Smith and the actions of Mr. Bruchet, testified to by both the plaintiff's civilian witnesses and the officers, are remarkably similar. As in Smith, the officers said Mr. Bruchet, as he lay shirtless on the floor on top of broken glass, moved his hands but did not strike the officers. As in Smith, there's a claim delay in the placement of his arms behind his back. There's no claim he attempted to attack the officers, no claim that he was particularly bellicose. So the bottom line is, had the jury been given the definition of active resistance set forth in the Headwaters cases, that would have assisted them as lay people in determining whether Mr. Bruchet engaged in active resistance. I don't see in Headwaters where they adopted that as the definition. I got the impression they were quoting another police department, what their definition was of active resistance for whatever purpose they were quoting it for. They weren't adopting that as the circuit law, were they? What they did is they quoted the definition, and then they went on to discuss the facts of the case, and this is the protesters who had... It says Eureka Police Department defines active resistance this way, and then they quote the Eureka Police Department definition. Exactly. And then it says characterizing it as active resistance is contrary to the facts. It didn't say this is the law of the circuit, or this instruction has to be given, or this is even what we defined it as. They said this is what Eureka Police Department says. This didn't match up. I know, but they didn't say this is the ideal jury instruction. I'll grant you that. And that's one of the important reasons why this case may be in the presence. We hold this as active resistance. We hold this to be the definition. They quoted a witness, basically. Well, they used the police department's definition en route to a holding that a jury could find that there was no active resistance. So they didn't say that this is the ideal form of a jury instruction. I'll grant you that, because I believe this was a qualified immunity appeal. But they cited that definition in support of their holding, that a jury could find that there wasn't active resistance. And that definition is in accord with other circuit decisions, such as Smith v. Emmett, which discuss whether or not there is active resistance. What were the exact facts here in terms of what Mr. Bruchet's situation was at the time that he was chased? The plaintiff's witnesses said that they were sitting in Mr. Bruchet's mobile home. At the time that the force was used. He's lying on the floor. He's unarmed. He's shirtless. He's lying on top of a bunch of broken glass because the sliding glass door has just been shattered. Plaintiff's civilian witnesses say he wasn't doing anything. Defense witnesses, officers saying he moved his hands somewhat, didn't try to strike them, didn't put his hands behind his back quickly enough. That's essentially what they're, in essence, what they're saying. How did he happen to get into the house? Didn't they encounter him outside? Well, the testimony is disputed. The plaintiff's civilian witnesses say they were all inside the house. Police officers say that he saw them and turned around and went into the house and put a dowel in the door so that it couldn't open. Whether that's credible or not, you know, the jury has to decide. But I would point out, since it's part of another assignment of error, that nothing was found. There were no drugs found. Nothing was seized in the warrant. Was drug paraphernalia found or manufacturing paraphernalia found? The officers who were on the SWAT team claimed that they saw paraphernalia. The officers who conducted the search didn't seize anything. And query as to why somebody would, you know, try to get away from the police or run inside your house if you have nothing to hide. Thank you very much. Thank you. May it please the Court, Richard Jolly, on behalf of the appellee, cities, and individual officers. We would submit to the Court that abusive discretion is the proper standard of review for determining whether or not the trial court should have submitted the active resistance instruction. There wasn't any discussion about the actual standard of review from appellants, either in the briefing or in the argument. But we would certainly think that's important, that here it's well within the trial court's discretion to refuse to provide the active resistance instruction submitted by plaintiff. Here the instructions mirror the pattern instructions from the Ninth Circuit on reasonable force. So certainly it's not abusive discretion not to provide an additional instruction on active resistance, even assuming that the instruction accurately reflects the law in the Ninth Circuit. And we have a contention about that, and I'll discuss that in a moment. But here, by instructing the jury or providing an additional instruction solely on one of many terms that are contained in the Graham factors places an undue emphasis on that particular factor. We don't have a special interrogatory that went to the jury that said, was it or did the plaintiff actively resist? There's nothing like that. So it's speculation for appellants to assert to the court that that was the dispositive factor in this case. We just don't know. And it's well within the court's discretion to refuse to provide the instruction, even if it did accurately reflect the law, because it places undue emphasis on just one particular factor. And I assume both sides, I didn't read this, but argued in closing argument about whether... That's correct, Your Honor. And here, when you look at the instructions that were provided in totality, appellants were provided ample opportunity to argue their case. They weren't precluded from presenting evidence about their theory of active resistance. Their expert testified about it. They argued it extensively in closing, as well as arguing the other factors related to whether or not force was reasonable under the circumstances. Excuse me. Let's go back to what I was saying before. It is ultimately a legal standard, right? What grain means by active resistance? It has to be. I think that's a difficult question, Your Honor, because it's also a term of art in the police community. I was going to go ahead and say that, and that makes it all the more confusing for the jury, because they were getting testimony which had to be about police practice and not about what the legal concept is. Yet they could have thought that these were conflicting views about what the legal concept was. Right? It was confusing to the jury, it seems to me, because they didn't know... How would they know what to make of this? What to make of the fact that you have one police officer saying, in my view, this is active resistance, the other one saying it's not. The simple answer would have been, well, neither of those things is the legal concept. It's just the way they understand police people operate. But they weren't... Were they told that? Actually, Your Honor, I believe that the way that the testimony was presented, at least from appellees, was exactly in that context, as you just described, that when police officers are trained about what is appropriate force under the circumstances, they've been taught that if a suspect presents a certain level of threat to them, then a certain amount of force is acceptable. But it wasn't presented to the jury from the concept of, well, this is some sort of rigid standard and this is what the law says. I don't think that's the way that the testimony was presented. But the appellants were certainly provided the opportunity to put on evidence about whether or not Mr. Bruchet was actively resisting, and it was argued extensively in the jury instructions, and we would submit that that's well within the trial court's discretion not to provide an additional instruction simply defining one term among many in the gram factors. But that's also assuming that the instruction proposed by appellants accurately reflects the state of the law. And we certainly contest that. We don't think that there's any reading in Headwaters or any other authority that solely limits active resistance to be trying to punch or strike a police officer. There's no authority to support that proposition, and we think I'm trying to find a term more delicate than cherry pick, but to pull two lines out of the Headwaters case and propose that that's the standard of the law in the Ninth Circuit, we don't think that's accurate. So it's well within the court's discretion to refuse to give this instruction, especially considering that it doesn't accurately reflect the law. Just to briefly touch on appellant's contention that the trial court aired by not allowing a second witness, a second paid expert, to testify about the meaning of active resistance. Again, that is within the trial court's discretion to determine what is or what is not appropriate rebuttal testimony. And it is noted in the record that this issue came up on the last day of trial and that it wasn't on a motion but simply just a colloquy in open court where appellants asked to put this on via taped testimony just prior to closing argument. And so, again, we would submit that that is further authority for the trial court to deny that particular request from appellant. On the collateral estoppel issue, we have submitted authority that states that it doesn't have to be identical claims. Whether issue preclusion is appropriate is whether there are identical issues to be determined. And at the state court level, certainly appellants were provided ample opportunity to litigate whether or not the execution of the search warrant was reasonable, whether it's couched in a trespass claim, whether it's couched in a negligence claim, or whether it's couched in a takings claim. The issue is whether the search warrant was reasonable. The claims do not have to be identical, and we cited a significant state case law, as these were state law issues, that discuss that it's issue preclusion and it doesn't have to be identical claims. Appellants' Did the owner ever get compensation for the damage that was done to the door? There was, and we're not sure how, I'm not sure where this plays into where the court's heading. There were two defendants in the first case, in the state law case, King County and the city of Kent. King County opted to settle, and the city of Kent opted not to. Mr. Bruchet did not receive any compensation from the city of Kent, but he certainly was not without remedy here. He could sue his tenants for engaging in conduct that is the proximate cause of the damage. But, again, when looking at whether or not collateral estoppel would apply. I'm just asking as a matter of just more my own interest, if the police break a door open, even if they're doing it by a warrant, is that then the homeowner's duty to repair that, or does the police repair that? Your Honor, I think that in speaking from the perspective of someone who represents a lot of police departments, that's decided on a case-by-case basis. And here, given the facts, there are specific reasons why that didn't happen. But from a legal standpoint, I think that the state court has now decided that you can have a trespass claim if the scope of the warrant is exceeded, but that wasn't the finding in state court. And we would submit that collateral estoppel certainly applies. I can see where the warrant would authorize them to break open the door, but not necessarily do it without making whole the people whose door is broken open. And certainly we would agree with that, Your Honor. But as far as here, the fact that the issues or the claims aren't identical is not dispositive on whether or not collateral estoppel applies. And just briefly, as far as the factual context of this case, we submitted at Supplemental Excerpts of Record 17 through 19, and then at page 45, that there was testimony in this case that Mr. Bruchet saw the police arrive. This is in the middle of the day. He runs inside, he barricades the door, and the reason the glass was broken and he winds up in the glass is because of his own conduct. We thank you for your time. Thank you very much. Mr. Worthershire. Thank you, Your Honor. I'm not sure if I read the 13 seconds. There is a standard of review discussion in our brief, and the jury instructions, it's on pages 27 and 28. And I would invite your attention to cases that say that this is an issue of law rather than an abuse of discretion issue. Secondly, I wanted to mention to you the side of the Supreme Court's 5-4 decision in state court. It's 193 Pacific 3rd 110. Thirdly, King County was a defendant in both the federal and state court cases, and they settled their side of the case in both state court and in federal court. Basically, the county obtained a warrant. Mr. Jolly's clients supplied the SWAT team. I think I'm out of time. Thank you, gentlemen. The case just argued is submitted. Good morning. 0735425 Stute v. City of Everett.
judges: Silverman, Berzon, Mahan